

19 - 3 9 3 3 JMC

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Task Force Officer Daniel DeLorenzo, being duly sworn does depose and state the following:

### A.     INTRODUCTION

1.      I make this affidavit in support of an application for a criminal complaint charging Davante Nathaniel HARRISON with possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

### B.     AFFIANT

2.      I am a detective with the Anne Arundel County Police Department.  Since March, 2014, I have served as a Task Force Officer with the Department of Justice, Federal Bureau of Investigation (DOJ/FBI) with the Baltimore Safe Streets Task Force (SSTF).

3.      The statements made in this Affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers; (c) criminal history records maintained by various law enforcement agencies; and (f) the training and experience of myself and other law enforcement agents and officers.

4.      Since becoming a law enforcement officer, I have participated in numerous investigations of unlawful drug trafficking, and have conducted or participated in surveillances, the execution of search warrants, the recovery of substantial quantities of narcotics and narcotics paraphernalia, and the debriefing of informants and cooperating witnesses.  I have also reviewed taped conversations, as well as documents and other records relating to narcotics trafficking and money laundering.  Through my training, education and experience, I have become familiar with

1

19 - 3 9 3 3 JMC

the manner in which illegal drugs are transported, stored, and distributed; the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the manner in which narcotics traffickers store and conceal the proceeds of their illegal activities.

5.      Through instruction and participation in investigations, I have become familiar with the manner in which narcotics traffickers conduct their illegal business, and the methods, language, and terms which are used to disguise conversations about narcotics activities.

6.      From experience and training, I have learned that narcotics traffickers frequently use cellular telephones to further their illegal activities by, among other things, remaining in constant or ready communication with one another without restricting either party to a particular location at which they might be subject to physical surveillance by law enforcement authorities.

7.      I also have learned that narcotics traffickers rarely refer to heroin, cocaine, cocaine base (also known as crack), phencyclidine (PCP), or other illegal drugs expressly by name.  Instead, to conceal the true nature of their illegal activities and to thwart detection by law enforcement, narcotics traffickers routinely refer to drugs, drug quantities, and drug prices by using seemingly innocuous words or phrases.

8.      I also know that drug traffickers frequently have access to several cellular telephones and that they periodically use newly acquired cellular telephones, all in an effort to avoid detection and to avert law enforcement efforts.  I also know that drug traffickers communicate by use of text messaging to discuss types, quantities, prices of narcotics, as well as to discuss meeting locations, all in an effort to elude detection and to impede the efforts of law enforcement.

2

19 - 3 9 3 3 JMC

9.      As a result of my training and experiences in narcotics-related investigations, I know that it is common for drug dealers and individuals to conceal contraband, proceeds of drug sales and records of drug transactions in secure locations within their residence, vehicles, and/or their business for ready access and to conceal proceeds from law enforcement and rival narcotics traffickers.  Additionally, I am aware that drug traffickers often use vehicles, including vehicles registered in the names of others and/or rental vehicles, to transport narcotics to their customers.

10.     Additionally, based on my training and experience and participation in other narcotics investigations, I know that it is common for drug dealers to be armed for the protection of themselves, their organization and also of their controlled substances.  I further know that it is common for drug dealers to conceal contraband, firearms, proceeds of drug sales, and records of drug transactions in secure locations within their residences, vehicles and/or businesses for ready access and that it is common for drug dealers to conceal proceeds from law enforcement authorities and rival narcotics traffickers.

11.     Because this Affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts that I believe are necessary to establish probable cause.  I have not, however, excluded any information known to me that would defeat a determination of probable cause.

C.      **PROBABLE CAUSE**

12.     In 2015, the FBI began an investigation into a violent drug trafficking organization ("DTO") selling cocaine, heroin and fentanyl in Baltimore City.  Known as 'Trained to Go" organization ("TTG"), this DTO included, among others, Roger TAYLOR, a/k/a "Milk", and

3

19 - 3 9 3 3 JMC

Montana BARRONETTE, a/k/a "Tana." Based on evidence gathered to date, investigators believe

that HARRISON, a/k/a "YGG Tay" was a source of supply of cocaine and heroin/fentanyl to

TTG. Several members of the TTG organization, including BARRONETTE were charged and

found guilty of racketeering.

13.     Pursuant to this ongoing investigation, investigators interviewed confidential

sources about the activities of HARRISON. During the investigation at least one confidential

source ("CS-1")[1] described HARRISON as a cocaine supplier to individuals in Baltimore since as

early as 2007.

14.     On November 22, 2019, the Honorable Beth P. Gesner authorized search and

seizure warrants for HARRISON.

15.     On Monday, November 25, 2019, geolocation data from HARRISON's phone and

vehicle showed that he was in the area of 10310 Gelding Drive in Cockeysville, Maryland. At

approximately 1:45 p.m., HARRISON exited 10310 Gelding and was detained without incident.

A search of HARRISON's person revealed the following:

    a.     $9,277.00 in US Currency (inside Dolce & Gabbana fanny pack);

    b.     A Glock 23 .40 caliber, serial number WKE393 loaded with an extended
           magazine containing 17 rounds including one round in the chamber.

16.     HARRISON was read his advice of rights and advised that he understood them.

After being read his rights, HARRISON consented to a search of his rental vehicle. Inside the

vehicle investigators located the following in the center console:

---

[1] CS-1 is a duly registered informant with BPD and FBI. CS-1 is a credible and reliable source of information that
has been registered with FBI and the BPD. CS-1 has been paid for his/her cooperation in the past and is cooperating
in hopes of receiving additional payment. CS-1 has prior convictions for second-degree assault.

.19 - 3 9 3 3 JMC

a.      Clear cellophane bag containing 3.2 grams of suspected heroin;

b.      Clear cellophane bag containing 8 grams of unknown white powder.

17.     Based on my training, knowledge, and expertise, I believe that the amount of suspected heroin, the way it was packaged, the proximity of a large amount of U.S. currency and HARRISON's possession of a firearm is all consistent with possession with the intent to distribute the suspected heroin.  Based on my training, knowledge and expertise I further believe that HARRISON possessed the firearm as a means to protect himself, the suspected heroin, and the large sum of U.S. currency which I believe is related to his drug trafficking activities.

18.     Additionally, I have spoken with an interstate nexus expert with the Bureau of Alcohol, Tobacco, and Firearms, and now know that: the Glock 23 .40 caliber, serial number WKE393 loaded with an extended magazine containing 17 rounds including one in the chamber, was manufactured outside the state of Maryland and determined to be a firearm under federal law.

**D.      CONCLUSION**

19.     To the best of my knowledge and belief, all statements made in this affidavit are true and correct.  Based on the foregoing facts I believe probable cause exists supporting the issuance of a Criminal Complaint charging the following: possession with the intent to distribute heroin, in violation of 21 U.S.C. § 841(a), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).

Daniel S. DeLorenzo
Task Force Officer, FBI

5

19 - 3 9 3 3 JMC

Sworn to and subscribed before me this ___ day of November, 2019

_____
The Honorable A. J. Mark Coulson
United States Magistrate Judge

FILED _____ ENTERED
LOGGED _____ RECEIVED

NOV 2 6 2019

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY